IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:25-cr-00108 |
| | ) | |
| AARON SAMSON RILEY | ) | Judge Crenshaw |

**SENTENCING MEMORANDUM ON BEHALF OF THE UNITED STATES**

COMES NOW the United States of America, by and through the undersigned Assistant United States Attorney, Monica R. Morrison, and submits this Sentencing Memorandum in this matter on behalf of the United States.

On April 24, 2026, the Defendant pleaded guilty to the two-count Indictment, charging Sexual Exploitation of a Minor and Possession of Child Pornography, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). (Doc. No. 30). The United States respectfully requests the Court impose a sentence of 300 months, which is the sentence of incarceration contemplated by the plea agreement, followed by a lifetime term of supervised release. The United States moves the Court to bifurcate the issue of restitution since the Defendant is objecting to restitution.

**APPLICABILITY OF THE SENTENCING FACTORS IN 18 U.S.C. § 3553(a)**

While a sentencing court must start any sentencing procedure with a calculation of the applicable Guideline range, the court must then consider the argument of the parties and factors set forth in 18 U.S.C. § 3553(a). *See Peugh v. United States*, 569 U.S. 530, 133 S.Ct. 2072, 186 L.Ed.2d 84 (2013). The factors that the court is to consider are outlined below with a brief discussion of their applicability or inapplicability following that follows:

I.  **"The nature and circumstances of the offense and the history and characteristics of the defendant"**

On September 29, 2023, officers with the Metropolitan Nashville Police Department ("MNPD") responded to a burglary in progress at a residence. (PSR, ¶ 14). The property manager of the residence reported the Defendant broke into the residence. (*Id.*) The Defendant was apprehended at the scene. (*Id.*) He admitted to MNPD officers that he broke into the residence the night before. (*Id.*) Officers observed damage to the two rear doors of the residence and a wall on the front of the residence. (*Id.*) The Defendant has remained in custody since his arrest on September 29, 2023. (PSR, p. 2).

Officers were summoned back to the residence after the review of surveillance footage reflected a second person, Minor Victim 1, was also involved in breaking into the residence. (PSR, ¶ 15). The surveillance footage from the residence reflected Minor Victim 1 running off into the woods. (PSR, ¶ 16). When MNPD returned to the residence, Minor Victim 1 was wearing a hooded sweatshirt and a towel. (*Id.*) Minor Victim 1 denied any inappropriate contact with the Defendant occurred. (*Id.*)

Electronic devices located in the Defendant's vehicle and on his person at the time of his arrest contained images and videos of the Defendant and Minor Victim 1 engaging in sexually explicit conduct at the residence in Tennessee as well as sexually explicit imagery of Minor Victim 1 created in other states. (PSR, ¶ 18).

Minor Victim 1 was a fifteen-year-old juvenile runaway from Alabama, who was initially reported missing on April 22, 2023. (PSR, ¶ 6). The investigation by Alabama law enforcement revealed the Defendant frequently called Minor Victim 1 at the time Minor Victim 1 ran away. (*Id.*) On April 28, 2023, the Defendant initially denied knowing Minor Victim 1 when interviewed by Alabama law enforcement. (PSR, ¶ 8). Later, he claimed he transported Minor Victim 1 to a

gas station in Tennessee and gave him a cell phone but had no additional information about the whereabouts of Minor Victim 1. (PSR, ¶ 8). On May 4, 2023, Alabama law enforcement responded to the residence of Minor Victim 1's sister, who reported Minor Victim 1 left her residence with the Defendant in the Defendant's vehicle, which contained suitcases and other personal property. (PSR, ¶ 9). She described attempting to follow the pair after they left her residence in the Defendant's vehicle. (*Id*.)

On May 25, 2023, the U.S. Marshals located the Defendant and Minor Victim 1 together in Georgia after a concerned citizen reported encountering Minor Victim 1 at a library. (PSR, ¶ 11). Both the Defendant and Minor Victim 1 returned to Alabama after being apprehended by the U.S. Marshals in Georgia but fled Alabama together and remained on the run until they were apprehended in Nashville, Tennessee, on September 29, 2023. (PSR, ¶¶ 14-16).

The Defendant is thirty-eight years old. (PSR, p. 3). He is a Criminal History Category III with four criminal history points. (PSR, ¶ 47). The Defendant's criminal history includes convictions for Cyberstalking, Driving Under the Influence, Possession of Marijuana, Illegal Possession of a Prescription, and Assault Second Degree. (PSR, ¶¶ 39-41, 44, 45). His arrest records include numerous arrests for Burglary, Theft of Property, Receiving stolen property, and Robbery. (PSR, ¶¶ 49, 50, 53-61).

## II. Considerations regarding the sentence imposed:

Section Two of 18 U.S.C. § 3553(a) deals with the requirements of any sentence to be imposed and, in turn, lists a variety of sub-factors for a court to consider in fashioning a sentence. Those include the following:

"(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

 (D) to provide the defendant with needed educational or vocational training, medical

care, or other correctional treatment in the most effective manner;"

18 U.S.C. § 3553(a)(2).

A sentence of 300 months followed by a lifetime term of supervised release reflects the seriousness of the offenses, promotes respect for the law, and provides just punishment for the offenses.  Despite law enforcement intervention by multiple jurisdictions, the Defendant continued his illegal relationship with Minor Victim 1 and transported him from Alabama to Georgia and then to the Middle District of Tennessee where the pair was ultimately apprehended.  The Defendant created sexually explicit imagery of Minor Victim 1 in multiple states, which was confirmed by the extraction of his digital devices.  (PSR, ¶¶ 13, 18).  The Defendant's insistence on continuing to engage in criminal sexual activity with Minor Victim 1 even after being arrested, jailed, and charged in two other states for conduct involving Minor Victim 1 demonstrates a blatant disrespect for the law.  The terror Minor Victim 1's family must have experienced each time the Defendant fled Alabama with Minor Victim 1 and their son's whereabouts were unknown to them is unimaginable.

In pursuit of his illegal relationship with Minor Victim 1, the Defendant was even willing to expose him to criminal liability as Minor Victim 1 could have been charged for breaking into the house in Davidson County and the resulting damage.  (PSR, ¶¶ 14, 17).  Moreover, Minor Victim 1's physical safety while traveling with the Defendant from state to state was questionable since the two broke into a storage unit in Georgia where they stayed for a week and later broke into a house in Tennessee.  (PSR, ¶¶ 10, 14-16).  Notably, to avoid suspicion, the Defendant

4

introduced Minor Victim 1 as his son to staff at the storage unit in Georgia. (PSR, ¶ 10). When Minor Victim 1 left his sister's house in Alabama with the Defendant, his sister followed the pair in the Defendant's vehicle. (PSR, ¶ 9). While she was following the pair, the Defendant's vehicle was involved in a traffic accident, and the pair fled the scene of the traffic accident in the Defendant's vehicle. (*Id*.) The Defendant may also have exposed Minor Victim 1 to sexually transmitted diseases as the images and videos of the Defendant and Minor Victim 1 engaging in sexually explicit conduct do not depict the Defendant putting on a condom beforehand. (PSR, ¶¶ 13, 18). The Defendant's actions demonstrate a lack of regard for the safety and well being of Minor Victim 1.

There is nothing to suggest that the Defendant would have ended his illegal relationship with Minor Victim 1 but for his arrest by MNPD officers and his continued incarceration following his arrest. Rather, his multi-state crime spree reflects his desire to continue violating the law by engaging in criminal sexual activity with Minor Victim 1 regardless of the criminal consequences. Since the Defendant persisted in engaging in the same criminal conduct despite repeated intervention by law enforcement, a sentence of incarceration of 300 months and a lifetime term of supervised release is necessary to protect the public from further crimes by the Defendant.

However, the Defendant's criminal conduct involving Minor Victim 1 isn't the Defendant's only criminal offense involving a minor victim and the creation of child sexual abuse material. The Presentence Report reflects that the Defendant pled guilty to Cyberstalking in 2021 related to the solicitation of sexually explicit images and videos from an eleven-year-old female relative, the creation of those sexually explicit images and videos and the transmission to the Defendant, and his threat to disseminate those images and videos of the minor female. (PSR, ¶ 45). During his online communication with his minor female relative, the Defendant sent her

photos of his penis and a video of him engaging in oral sex with another male. (PSR, ¶ 45). Although the Defendant pled guilty to Cyberstalking, the minor female also reported the Defendant entered her room, rubbed her legs and thighs, pinned her down, and kissed her neck. (*Id*.) As the Defendant did in this case, the Defendant was willing to lie to law enforcement regarding his conduct involving his minor female relative by claiming that the minor victim made "false allegations" against him. (*Id*.) Only two years after pleading guilty to Cyberstalking, the Defendant began engaging in criminal conduct involving Minor Victim 1. The Defendant poses a danger to any minor in the community, which necessitates the imposition of the sentence of incarceration proposed by the Parties and a lifetime term of supervised release.

Sex offender treatment is critical considering the Defendant's criminal conduct in this case and his conviction for Cyberstalking of his minor female relative. Substance abuse treatment is also appropriate given the Defendant's history of substance abuse. (PSR, ¶¶ 76-78). The Defendant may also benefit from mental health treatment given the information contained in the Presentence Report. (PSR, ¶¶ 73-75). Vocational training is also necessary considering the Defendant's employment history. (PSR, ¶¶ 82, 83).

### CONCLUSION

For the foregoing reasons, a sentence of 300 months' imprisonment followed by a lifetime term of supervised release is sufficient but not greater than necessary to achieve the ends of justice.

Respectfully submitted,
BRADEN H. BOUCEK
United States Attorney

By: */s/ Monica R. Morrison*
MONICA R. MORRISON
Assistant U.S. Attorney
719 Church Street, Suite 3300

6

Nashville, Tennessee 37203
Phone: (615) 401-6593
monica.morrison@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing will be served electronically to counsel for defendant via CM/ECF on the 19th day of July 2026.

/s/ *Monica R. Morrison*
MONICA R. MORRISON

7