| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) No. 3:25-00108 |
| v. | ) JUDGE CRENSHAW |
| | ) |
| AARON SAMSON RILEY | ) |

## SENTENCING MEMORANDUM FOR AARON RILEY

Through counsel, Aaron Riley asks the Court to accept the agreement of the parties and impose a sentence of 300 months. Mr. Riley further asks the Court to order five years of Supervised Release. The requested sentence falls within the advisory guidelines range and fulfills the sentencing goals described in 18 U.S.C. § 3553(a). The Rule 11(c)(1)(C) agreement is a global resolution that incorporates punishment for relevant conduct in two other jurisdictions. The prosecutors on the cases in Alabama and Georgia have agreed that the proposed 300-month sentence suffices to meet their interests, and they will dismiss all pending charges in their jurisdictions following sentencing in the Middle District of Tennessee.

## BACKGROUND

### A. Case History

Aaron Riley's interactions with Minor Victim ("MV") lasted several months and spanned three states. MV and Mr. Riley both lived in or near Huntsville, Alabama, and that is where they met in Spring of 2023. Law enforcement first became involved when MV's father called the Madison County Sheriff's Office in April to report that his son had run away. (PSR at ¶ 6.) In May, MV and Mr. Riley

traveled to Clayton County, Georgia, where they lived together for a short while in a rented storage unit. (*Id.* at ¶ 10.) Police caught them in Henry County, Georgia, and took them back to Alabama, where Mr. Riley was charged with obstruction of child custody. (*Id.* at ¶ 11.) After Mr. Riley was released on bond, MV once again fled his father's house. He rejoined Mr. Riley, and the two of them again left the state of Alabama. They were passing through Nashville when they were arrested on September 29, 2023, after breaking into a house to stay the night. (*Id.* at ¶¶ 14-15.) Neither MV nor Mr. Riley have any connection to the Middle District of Tennessee.

After arresting Mr. Riley for burglary, Nashville law enforcement found images of MV on Mr. Riley's phone and charged him with child pornography. Nearly two years later, the government brought federal charges in the Middle District of Tennessee, and the Davidson County charges were dismissed. (*Id.* at 2.) Mr. Riley now faces two counts of child pornography in federal court, as well as child sex charges in Madison County, Alabama, and Clayton County, Georgia. All of the charges relate to his course of conduct with MV in 2023.

### B. Personal History

Over the past three years in jail, Aaron Riley has spent considerable time reflecting on his life and his choices. What led a 35-year-old man to embark on a relationship with a teenager? Mr. Riley is not an inherently bad person, so how did he justify his behavior? The answers lie in his childhood abuse and adolescent history of dating much older men.

2

Aaron was the fourth child of Lewis and Penny Riley. An immigrant from Honduras, Lewis Riley was a Seventh Day Adventist preacher who led services at the family's house in New Orleans every Saturday. (*Id.* at ¶ 65.) Although he preached love and good works to the congregation, he was a different man at home. Lewis Riley was relentlessly controlling and abusive to his wife and children. He would beat his wife in front of the children, sometimes making her strip naked first, and sometimes forcing his sons to join in the abuse of their mother. (*Id.*) Lewis Riley also beat the children, but he singled out Aaron for the worst treatment. Aaron grew up being called "faggot," "sissy," and "little girl," and the epithets were often accompanied by humiliation and beatings designed to make him "more of a man." (*Id.*) Lewis Riley was emotionally as well as physically abusive. He would brutally beat and denigrate Aaron, but then hold him and tell him the violence was based on love.

Lewis Riley died when Aaron was around 11 years old, leaving the family in poverty. Penny Riley had been a housewife, but she now had seven children to support. She began to work as many hours as she could, just to put food on the table, and she quickly remarried another man. Her new husband, Floyd Falcons, was similarly intolerant of Aaron and made his disgust known through both verbal and physical abuse. (*Id.* at ¶ 66.) With his domineering father dead, Aaron began to act out, finally expressing the pent-up anger from the years of mistreatment. (*Id.* at ¶ 64.) He never felt loved or accepted in his family.

3

From an early age, Aaron sought the love he lacked at home through relationships with older men. (*Id.* at ¶ 68.) As an adolescent, his sexual experiences were all with adults, never with his peers, and he grew to see age-discrepant relationships as the norm. When Aaron was 14 years old and in 9th grade, he had an affair with a married, male teacher at his school. (*Id.*) To Aaron, this relationship didn't feel manipulative or abusive; it felt like love. It felt like someone finally cared about him and valued him. Looking back, Aaron still remembers the relationship in a positive light; it made him feel wanted and accepted for the first time.

Toward the end of high school, everything fell apart for Aaron. Hurricane Katrina forced the family to leave New Orleans, losing most of what they had. (*Id.* at ¶ 70.) Aaron also broke his knee playing football and required surgery. (*Id.* at ¶ 71.) He received Vicodin for the knee pain, and he quickly developed an addiction. (*Id.* at ¶ 77.) Without football to keep him going, he dropped out of the new high school in Alabama. He spent the next decade and a half floating around, abusing drugs, making bad decisions, and engaging in self-destructive behavior.

In 2022, Aaron was trying to piece his life back together. He finally stopped using Vicodin and he started classes to earn his GED. He first met MV on an adults-only dating website in early 2023. Like Aaron, MV came from a repressive Seventh Day Adventist background and a family that rejected his sexuality. Despite the age difference, Aaron believed MV offered him the love and acceptance he had always craved and never received. Given his own history dating older men, Aaron did not fully grasp the wrongfulness of his actions. He believed he was providing the

4

emotional support that MV needed to recover from a toxic home life. Mr. Riley now understands the inappropriateness of his behavior, but at the time it seemed justifiable.

## ARGUMENT

Although the guidelines are no longer mandatory, they "should be the starting point and the initial benchmark" for sentencing courts. *Gall v. United States*, 552 U.S. 38, 49 (2007). "[I]n the ordinary case, the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 109 (2007). A district court may not vary from the guidelines without reason, but rather must have a justification that is "sufficiently compelling to support the degree of the variance." *United States v. Perez-Rodriguez*, 960 F.3d 748, 754 (6th Cir. 2020) (quoting *Gall*, 552 U.S. at 50). In Mr. Riley's case, there is no reason to vary outside the guidelines range.

Mr. Riley asks for a within-guidelines sentence of 300 months. The Presentence Report correctly calculates the advisory guidelines range to be 292 to 365 months. The sentencing guidelines for child pornography are notoriously harsh, and downward variances are common.[1] Mr. Riley is the rare defendant who asks for a sentence within the guidelines and for whom a guidelines sentence is appropriate under 18 U.S.C. § 3553(a).

---

[1] The Judiciary Sentencing INformation (JSIN) website shows national sentencing trends. For defendants sentenced under U.S.S.G. § 2G2.1 with the same offense level and criminal history category as Mr. Riley, the average sentence was 260 months and 53% of sentences involved a downward variance. Available at https://jsin.ussc.gov/analytics/saw.dll?Dashboard.

### A. The nature and circumstances of the offense and the history and characteristics of the defendant – 18 U.S.C. § 3553(a)(1)

Mr. Riley's history and characteristics are extremely mitigating, but the nature and circumstances of the offense could be aggravating. When viewed together, the two prongs of 18 U.S.C. § 3553(a)(1) cancel each other out, supporting a within-guidelines sentence. Mr. Riley's history of physical abuse from his father and step-father, followed by his repeated victimization by adult men during his formative years, helps explain his actions. He is not a predator, but rather a deeply damaged man. His history of abuse by his father and stepfather, and his subsequent sexual victimization by adults during his youth, normalized the very behavior for which he was convicted.. On the other hand, his inappropriate relationship with MV lasted several months and involved fleeing to other states. In balance, the requested within-guidelines sentence is appropriate.

### B. The seriousness of the offense, respect for the law, and providing just punishment – 18 U.S.C. § 3553(a)(2)(A)

25 years should be sufficiently punitive for any non-fatal crime. This lengthy sentence provides significant punishment and promotes respect for the law. This sentence is ten years over the mandatory minimum for the crime at issue and fully reflects the gravity of Mr. Riley's actions. Additionally, due to the nature of this crime, the sentence will not be reduced by earned credits under the First Step Act, so Mr. Riley will serve the full amount of time. 18 U.S.C. § 3632(d)(4)(D)(xlii).

## C. Specific and general deterrence – 18 U.S.C. § 3553(a)(2)(B), (C)

This sentence serves as a powerful deterrent. Perhaps if Mr. Riley's 9th grade teacher or 30-something neighbor had been sent to prison for 25 years, Mr. Riley would not be where he is today. A 25-year sentence sends the message that sexual relationships between adults and youth are not acceptable, contrary to the lessons Mr. Riley internalized as a youth.

The sentence also sufficiently protects the public from future crimes by Mr. Riley. He will be almost sixty years old by the time he finishes his federal sentence. Age is one of the most significant factors in recidivism. The Sentencing Commission's report on recidivism and age found that "[a]ge exerted a strong influence on recidivism across all sentence length categories. Older offenders were less likely to recidivate after release than younger offenders who had served similar sentences, regardless of the length of sentence imposed." United States Sentencing Commission, *The Effects of Aging on Recidivism Among Federal Offenders*, (2017) at 9.[2]

## D. Providing the defendant with needed training and treatment – 18 U.S.C. § 3553(a)(2)(D)

Mr. Riley will spend over two decades in federal prison. While in custody, he hopes to receive substance abuse and mental health treatment. He also plans to engage in vocational training and further his education. He made good use of his time while incarcerated at the Davidson County Sheriff's Office, and he wants to continue to learn and better himself. During his two years at DCSO, he earned his

---

[2] Available at https://www.ussc.gov/research/research-reports/effects-aging-recidivism-among-federal-offenders.

GED and a bevy of vocational and therapeutic certificates. (PSR at ¶¶ 80, 82.)
Unfortunately, he was not able to continue with training and treatment once moved to federal pretrial custody.

### E. The kinds of sentences available and the U.S.S.G. guidelines range – 18 U.S.C. § 3553(a)(3), (4)

The statute of conviction mandates a minimum custodial sentence of 180 months. 18 U.S.C. § 2252(a). The proposed 300-month sentence meets the statutory requirement – both as a custodial sentence and due to the length of the sentence. The advisory guidelines range for Mr. Riley is 292 months to 365 months. Thus, the agreed-upon sentence falls within the guidelines recommendation.

### F. Avoiding unwarranted sentencing disparities – 18 U.S.C. § 3553(a)(6)

Because Mr. Riley's requested sentence is within the guidelines, it may be presumed to avoid any unwarranted disparity. *United States v. Mitchell*, 681 F.3d 867, 883 (6th Cir., 2012) (finding that a within-Guidelines sentence was not substantively unreasonable on the grounds of unwarranted disparities.) "[T]he guidelines are designed to avoid unwarranted disparities—[thus,] whatever else may be wrong with a within-guidelines sentence, it is not likely to be an unwarranted disparity." *United States v. Wimbley*, 349 F. App'x 54, 58 (6th Cir. 2009) (internal citation omitted").

### G. Pertinent policy statements and the need to provide restitution – 18 U.S.C. § 3553(a)(5), (7)

There are no policy statements pertinent to this case. Restitution is disputed between the parties, and Mr. Riley has no ability to pay any amount. He is indigent, with no savings or financial support from others. Mr. Riley asks for a bifurcated

8

hearing at which the Court can determine the appropriate amount of restitution. Given his indigency and the amount of time he will be incarcerated, the restitution owed should not affect the length of his sentence.

### H. The Rule 11(c)(1)(C) agreement is part of a global resolution

Mr. Riley has agreed to a sentence of 300 months so that he may obtain a final, global resolution to his criminal troubles. As noted above, Mr. Riley faces pending charges related to relevant conduct in both Madison County, Alabama, and Clayton County, Georgia. The prosecutors in Madison County and Clayton County have provided written agreement to dismiss all charges pending in their jurisdictions once Mr. Riley is sentenced to 25 years in federal court. (Plea Agreement, Doc. No. 30, at ¶ 31.)

A joint resolution benefits all parties in Mr. Riley's case. For Mr. Riley's part, he avoids being shuttled to multiple jurisdictions to relitigate essentially the same allegations, and he gains certainty about the future. MV and his family also gain finality and closure rather than lengthy prosecution with the possibility of the young man needing to testify. The dismissal of the Georgia and Alabama cases precludes the expenditure and hassle of extraditing Mr. Riley from federal custody and transporting him to the state facilities. Finally, as this Court is well aware, jail credit can be labyrinthine when multiple jurisdictions are involved. With the joint resolution, all parties know exactly how much time Mr. Riley will remain in custody.

The prosecutor in Clayton County, Georgia, has brought multiple counts against Mr. Riley, including a charge of Aggravated Child Molestation pursuant to Georgia Code § 16-6-4. The crime requires sexual touching of a person under age 16, and the aggravating factor is sodomy. O.C.G.A. § 16-6-4(c). The minimum sentence for this crime is 25 years in custody. O.C.G.A. § 16-6-4(d)(1). Due to the nature of the pending counts in Georgia, Mr. Riley has agreed to accept a sentence of 300 months in the federal case.

## CONCLUSION

Through reflection and soul-searching, Mr. Riley has come to understand both the harm he inflicted on MV as well as the psychological scars that led him to engage in the relationship in the first place. He accepts responsibility for his actions, and he has agreed to a sentence of 25 years. Mr. Riley asks the Court to accept the agreement of the parties and impose a within-guideline sentence of 300 months, followed by five years of supervised release.

Respectfully submitted,

s/ *Mary Kathryn Harcombe*
MARY KATHRYN HARCOMBE
Assistant Federal Public Defender
164 Rosa L. Parks Blvd.
Nashville, Tennessee 37203
615-736-5047
marykathryn_harcombe@fd.org

Attorney for Aaron Samson Riley

10

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2026, I electronically filed the foregoing *Sentencing Memorandum* with the U.S. District Court Clerk by using the CM/ECF system, which will send a Notice of Electronic Filing to the following: Monica Morrison, Assistant United States Attorney, 719 Church Street, Suite 3300, Nashville, Tennessee, 37203.

s/ *Mary Kathryn Harcombe*
MARY KATHRYN HARCOMBE

11